## LOUISVILLE & NASHVILLE RAILROAD CO. v. SLOSS-SHEFFIELD STEEL & IRON COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 25.   Argued April 23, 1925.—Decided November 23, 1925.

1. The case is properly here on writ of error; therefore certiorari is denied.   P. 223.
2. Upon review of a judgment enforcing a reparation order made by the Interstate Commerce Commission in lieu of an earlier one, the carrier contended that the later order, though less in amount, was nevertheless void, because by it the commission not merely eliminated items inadvertently included in the earlier order but, without notice to the carrier, or opportunity to be heard, added others which had been inadvertently omitted. *Held* that, assuming it otherwise void, the later order, having been made on petition of the shipper, could be treated as effecting a remittitur of part of the award, and the action would stand as one upon the original order (which was annexed to the complaint and introduced in evidence); appropriate amendments of the pleadings, in that regard, being considered as made in this Court, and alleged errors of the trial court, in ruling on evidence concerning the scope of the later order,

being disregarded as not affecting the substantial rights of the parties. P. 223.

3. A prayer for reparation, though lacking in details of specific claims, will invoke the jurisdiction of the Commission and stop the running of the two year statute of limitations, if such that under ordinary legal procedure the details could be supplied by amendment or bill of particulars. P. 226.

4. Where a claim for reparation, incidental to a proceeding to reduce rates, was first denied by the Commission, but later granted on a petition for rehearing, *held*, that neither the delay of a year and upwards in filing such petition nor the subsequent delay in deciding it deprived the Commission of jurisdiction of the claim and let in the two year statute of limitations, there being then no rule limiting the time for filing the petition, and its entertainment under the circumstances being in accordance with the practice of the Commission. P. 228.

5. A prayer for reparation in a proceeding to reduce future rates should not be limited by a narrow construction to losses suffered by the complaining shipper before the proceeding was begun, thus excluding those to be suffered while it is pending. P. 229.

6. A complaint for reparation which is sufficiently broad to cover relief as to rates over connecting lines, will stop the two year statute of limitations from running for the initial carrier proceeded against, though not for the connecting carriers, until they are made parties. P. 230.

7. The carriers participating in forming an excessive joint through rate are jointly and severally liable for resulting damages to shippers, without regard to the division of the rate among the carriers. P. 231.

8. A manufacturer sold and shipped pig iron f. o. b. destination, to buyers named as consignees in straight bills of lading; the iron was invoiced and charged on the seller's books at the full delivered price, and the consignees physically paid the freight upon acceptance of delivery; the sales contracts, unknown to the carrier, declared the price to be based on the existing freight rate (specifying it) and provided: that the buyers should have the benefit of any decline, but must pay any advance, in the freight rate, that the freight should be paid in cash and the balance (of the price) 30 days from average date of monthly deliveries, and that the seller would not be liable for any overcharge in freight when correct rate was expressed in the bill of lading. The freight rates proving excessive, *Held*, that reparation, in the amount of the excess, was properly

awarded (Interstate Commerce Act § 16,) to the consignor.  As a seller in a competitive market, the consignor was directly affected by the rate; the burden of the published rate rested on the consignor under the bill of lading; the consignee, in paying the freight, acted solely as the consignor's agent; and the equities between them were no concern of the carrier.  *So. Pacific Co.* v. *Darnell-Taenzer Co.,* 245 U. S. 531, distinguished.  P. 234.

9. In an order of reparation for payment of excessive freight charges, interest may be allowed by the Commission from time of such payment.  P. 238.

10. A judgment enforcing a reparation order may include interest on the amount of the order from its date, even though that amount be itself in part made up of interest.  P. 240.

295 Fed. 53, affirmed.

ERROR to a judgment of the Circuit Court of Appeals which affirmed, with a modification, a judgment of the District Court on an order of reparation made by the Interstate Commerce Commission.  Certiorari was applied for and denied.

*Messrs. E. Perry Thomas* and *Charles J. Rixey,* with whom *Messrs. W. A. Northcutt, John S. Stone* and *S. P. Smith* were on the brief, for plaintiff in error.

The plaintiff sustained no damage as the result of the rates being unreasonable; it did not pay and bear the freight charges.  *Ramsey & G. Mfg. Co.* v. *Kelser,* 55 N. J. L. 320; *United States* v. *R. P. Andrews & Co.,* 207 U. S. 228; Dissenting Opinion, 40 I. C. C. 738; *Barnett & Record Co.* v. *Fall,* 62 Tex. Civ. App. 391; *Cobbs* v. *Joyce-Watkins Co.,* 287 Mo. 39.  *Southern Pacific Co.* v. *Darnell-Taenzer Lumber Co.,* 245 U. S. 531, distinguished. See also *Jennison Bros.* v. *Chicago & N. W. Ry.,* 133 Minn. 268.

In awarding reparation the Commission misconstrued the *Darnell-Taenzer Case, supra.*  It appears from the opinions of the Circuit Court of Appeals in that case (221 Fed. 890, 229 Fed. 1022, see also 190 Fed. 659), that although the shipments were sold by the Darnell-Taenzer

Company f. o. b. destination, the purchaser or consignee in fact paid the freight to the carrier at point of destination. Terms of the contract here, which did not exist there, providing that the consignee is to have the benefit of any decline and bear the burden of any advance in the freight rate, rebut the implication that the seller is to bear the freight and show conclusively that the purchaser or consignee in paying it to the carrier acts for himself and not as the agent of the seller. The seller in effect assigned to and vested in the purchaser in this case whatever right of action might arise in favor of the seller against the carrier for excessive or unreasonable charges. See *Spiller* v. *Atchison, T. & S. F. Ry.*, 253 U. S. 117. Subsequent cases conflict with the construction and interpretation placed by the Commission upon the decision in the *Darnell-Taenzer Case*. *Pittsburgh, etc. Ry.* v. *Fink*, 250 U. S. 577; *New York Central* v. *York & Whitney Co.*, 256 U. S. 406; *L. & N. R. R.* v. *Central Iron Co.*, 265 U. S. 57. See also 4 Ruling Case Law, p. 857, par. 310; 6 Cyc., p. 500; Elliott on Railroads, Vol. 4 (3d ed.), p. 872, par. 2361; *Great Northern R. R.* v. *Hyde*, 279 Fed. 783; *Taylor* v. *Iron Works*, 124 Fed. 826; *Gates* v. *Ryan*, 37 Fed. 154.

There is such relationship of contract between the carrier and the consignee who accepts from the carrier a shipment of goods under a bill of lading imposing on the consignee the burden of paying the freight, that the carrier can maintain an action against the consignee for the lawful freight if not paid, or for an undercharge when not paid in full. Clearly then, there is such privity between the two that, when the consignee pays the carrier an excessive freight rate, the consignee can maintain an action against the carrier for recovery of the excess. If we look only to the bills of lading, under which, presumptively, the title to the shipments passed to the consignee at the point of origin upon the delivery there to

the carrier, the consignee is the only person that could maintain an action against the carrier for any excessive charges paid by him. For, since the consignee, who actually accepted the shipments and paid the freight under bills of lading, is presumptively, so far as the carrier is concerned, the owner of the shipment and became legally liable to the carrier for the lawful freight charges, he is, presumptively, the only person damaged as a result of having paid excessive charges.

The order of reparation is void, because invoked by supplemental petition, or application for rehearing, of which the defendant had no notice and no opportunity to be heard. The order is void to the extent of the inclusion therein of reparation on shipments transported during the period from April 17, 1910, to April 16, 1912. The original petition of April 16, 1912, was not sufficient under §§ 13 and 16 of the Interstate Commerce Act and under the rules of the Commission to invoke the jurisdiction to award reparation, or to toll the statute of limitations of two years as provided in the Act. Even if the original petition of April 16, 1912, was sufficient to invoke the jurisdiction to award reparation, in the first instance, yet since it was denied by the Commission in its order of June 1, 1914, and since no application for rehearing was filed until July 22, 1915, the Commission had lost whatever jurisdiction it originally acquired before such application was filed. Although the supplemental petition of July 22, 1915 was filed on the date last mentioned, nevertheless, upon the filing of the same no action was taken to stay or reverse the original finding and decision and order denying reparation. Not until four years thereafter did the Commission undertake to reconsider its first decision denying reparation, and not until six years thereafter did it undertake to make the award of reparation upon which this suit is based. The order of the Commission is void to the extent that it included

reparation on shipments that were transported during the period from April 16, 1912, to July 22, 1913.

*Mr. Challen B. Ellis,* with whom *Messrs. O. E. Harrison, Woodson P. Houghton, Wade H. Ellis* and *Hugh Morrow* were on the brief, for defendant in error.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This suit, under § 16 of the Act to Regulate Commerce, February 4, 1887, c. 104, 24 Stat. 379, 384, was brought against the Louisville & Nashville Railroad in the federal district court for northern Alabama. By it the Sloss-Sheffield Company sought to recover $63,982.80 with interest, being the amount of a reparation order entered by the Interstate Commerce Commission for excessive freight charges exacted in violation of § 1 of the Act. 60 I. C. C. 595; 62 I. C. C. 646. The charges here in question were paid between April 17, 1910 and September 15, 1915, on shipments of pig iron from the company's furnaces in Alabama, over lines of the Louisville & Nashville as initial carrier, to purchasers at Ohio River crossings and points beyond in central freight association territory.[1] The reparation directed was an incident of proceedings commenced April 16, 1912, to secure a reduction of the tariff rates. On June 1, 1914, an order was entered reducing rates for the future 35 cents a ton. Later, a finding was made that to this extent the existing tariff rates had exceeded what was reasonable throughout the whole period, commencing two years prior to the filing of the original complaint before the Commission. The order sued on, which was entered July 12, 1921, accompanied

---

[1] Reparation was awarded also to other furnace companies similarly situated. They joined as plaintiffs in this suit pursuant to § 16 of the Act; but, by reason of stipulations between the parties, these claims do not require consideration here. The stipulations cover also like claims against other carriers.

what is known as the Seventh Supplemental Report. See 30 I. C. C. 597; 35 I. C. C. 460; 40 I. C. C. 738; 46 I. C. C. 558; 51 I. C. C. 635; 52 I. C. C. 576.

The District Court, which heard the case without a jury, entered judgment in accordance with the Commission's order, except that it disallowed damages for the period between April 16, 1912 and July 22, 1913. Writs of error from the Circuit Court of Appeals were sued out by both the plaintiff and the defendant. That court entered judgment for $103,367.47, being the full amount awarded by the Commission with interest; and thus affirmed as modified the judgment of the District Court. 295 Fed. 53. The carrier then sued out a writ of error from this Court. It also filed a petition for a writ of certiorari, consideration of which was postponed to the hearing on the writ of error. Compare *Southern Pacific Co.* v. *Darnell-Taenzer Lumber Co.,* 245 U. S. 531, 535. As the case is properly here on writ of error, the petition for certiorari is denied. Seventy-seven errors are formally assigned. Only seven distinct contentions require separate consideration. Some of these relate to matters of procedure, others to substantive rights. Some assert that complete defenses to the suit were erroneously overruled, others that the amount of the recovery should have been reduced. Those which deal with matters of procedure will be considered first.

*First.* It is claimed that the order of reparation dated July 12, 1921, on which the suit rests, is void, because entered without notice to the Louisville & Nashville or opportunity to be heard thereon in violation both of the rules of the Commission and of the due process clause of the Fifth Amendment. The essential facts are these: The order sued on differed from an earlier one entered March 8, 1921, accompanying the so-called Sixth Supplemental Report, only in this. It reduced the amount payable from

$68,728.80 to $63,982.80. It deferred the final date for payment from June 1, 1921, as prescribed by the earlier order, to September 1, 1921. And it declared in terms that the order of " March 8, 1921, be, and the same is hereby, vacated and set aside." These modifications were made in response to a petition filed by the Sloss-Sheffield Company on June 30, 1921, which recited, among other things, that certain items of excess charges had been inadvertently included in earlier computations and prayed that the order theretofore entered be modified by making the reduction stated. The Louisville & Nashville had no notice of this application, but it had had notice and opportunity to be heard, and was fully heard, on all proceedings leading up to the entry of the Sixth Supplemental Report and accompanying order. Neither of the two reports, and neither of the accompanying orders, recited the items of excess charges of which the sums named therein were the aggregates. The District Court found that, by the order of July 12, 1921, the Commission merely corrected its Sixth Supplemental Report and award through striking out and deducting a certain part of the amount theretofore awarded; that the substituted order did not award the Sloss-Sheffield Company reparation on any shipment that was not included and allowed for in its order of March 8, 1921; that the award of July 12, 1921, was based entirely upon evidence furnished the Commission prior to entering the March 8 order; and that the company did not, in connection with its petition of June 30, 1921, submit to the Commission any new or additional evidence. The Louisville & Nashville did not, after learning of the entry of the substitute order, take any proceedings before the Commission to have it set aside or corrected; nor was other objection made thereto until it raised the point in this suit.

The Louisville & Nashville concedes that this claim of invalidity is unfounded if the order of July 12, 1921 did

nothing except reduce the amount required to be paid. The contention is that the Commission did more than reduce the amount payable; that the order not only eliminated certain items of excess charges inadvertently included, but added certain items inadvertently omitted; that this fact is established by recitals in the petition of June 30, 1921, by a passage in the Seventh Supplemental Report, and by evidence introduced by the carrier in the District Court; that the evidence to the contrary introduced by the shipper and on which that court relied was incompetent, was duly objected to, and should have been excluded; and that the finding made thereon is in direct conflict with matter of record in the Commission.

The Commission, like a court, may, upon its own motion or upon request, correct any order still under its control without notice to a party who cannot possibly suffer by the modification made. Compare *Pennsylvania R. R. Co. v. United States*, 288 Fed. 88. This power of the Commission is, in adversary proceedings, narrowly circumscribed; and its exercise is not to be encouraged. Whether in this instance these narrow limits were transcended by the Commission, we have no occasion to enquire. The original order was sufficient to sustain the findings and the judgments of the District Court as modified and affirmed by the Circuit Court of Appeals. A copy of it was annexed to the petition in the District Court, and was introduced in evidence there. If lack of notice to the Louisville & Nashville rendered the later order void, the original order remained in full force. Compare *Chicago, M. & St. P. Ry. Co. v. Hormel & Co.*, 240 Fed. 381, 383–384. The petition of the Sloss-Sheffield Company of June 30 for a modification may be treated as a remittitur by that company of a part of the amount originally awarded, *Pacific Postal Telegraph Cable Co. v. O'Connor*, 128 U. S. 394; the order of July 12 operates as the entry of the remittitur; and appropriate amend-

ments in the pleadings may be deemed to have been made here. The insistence of the Louisville & Nashville that the order of July 12 should be deemed valid and of full force and effect in so far as it sets aside, vacates and annuls the prior order of March 8, but void in so far as it directs a payment to be made, is without support in reason or authority. Thus, the alleged errors in ruling on the admissibility of evidence do not appear to have affected the substantial rights of the parties. Act of February 26, 1919, c. 48, 40 Stat. 1181.

*Second.* It is claimed that the order of reparation sued on is void to the extent that it includes damages on account of shipments made between April 17, 1910 and April 16, 1912, because the cause of action for this period was barred by the special two-year statute of limitations contained in § 16 of the Interstate Commerce Act. In the original petition filed April 16, 1912, reparation for this period was specifically prayed for in these words:

"That the rates and charges herein complained of be found and declared to have been unjust, unreasonable and discriminatory for a period of at least two years preceding the filing of this complaint; and that the complainants . . . may have reparation to the extent of the difference between the rates and charges actually paid by them severally and the rates and charges that may herein be found and declared the just and reasonable maximum rates to be charged in the future."

This claim rests primarily upon the assertion that the prayer is so general as to be, under §§ 13 and 16 of the Act and the rules of the Commission, insufficient to invoke its jurisdiction to award reparation.[2] The argument is

---

[2] The proceedings had were these. After the Commission ordered that, for the future, the rates complained of be reduced because unreasonable, it found that throughout the period beginning two years prior to the filing of the complaint the existing rates had also been unreasonable and excessive to the extent of 35 cents a ton, 52 I. C. C.

that a petition before the Commission for reparation must give not only the names of the parties complainant and of the carrier against which the claim is asserted, but also a detailed description of the specific claims arising out of the several shipments involved; that this detail is indispensable, because under § 13 the carrier has, after the presentation of the claim to the Commission, a *locus penitentiae* in which to determine whether he will satisfy the claim or contest it; and that a later specification of the claim is of no avail, because the filing of such a definite description of the claim with the Commission within the two years is a jurisdictional requirement. It is true that the two-year requirement is jurisdictional. *United States ex rel. Louisville Cement Co.* v. *Interstate Commerce Commission*, 246 U. S. 638. But no statute or rule imposes upon the Commission procedure so exacting as to make fatal mere failure to present within the period of limitation the detail of a statement which under the procedure prevailing in courts of law may ordinarily be supplied by amendment or a bill of particulars. As was clearly shown by Judge Knapp in *Arcadia Mills* v. *Carolina, Clinchfield & Ohio Ry. Co.*, 293 Fed. 639, the contention of the Louisville & Nashville would involve the adoption of procedure contrary to the long established practice of the Commission and would defeat the convenient and effective administration of the Act.[3]

---

576; held that the Sloss-Sheffield Company was entitled to reparation on account of shipments made during that period; directed that the parties prepare statements showing the details of shipments in accordance with Rule V of its Rules of Practice; ordered, upon the filing of the Sixth Supplemental Report, 60 I. C. C. 595, the payment therein specified; and ultimately substituted the order of July 12, 1921 for that of March 8. 62 I. C. C. 646.

[3] See *Mountain Ice Co.* v. *Delaware, L. & W. R. R. Co.*, 21 I. C. C. 45; *Michigan Hardwood Mfrs. Assn.* v. *Transcontinental Freight Bureau*, 27 I. C. C. 32, 34, 36; *Marian Coal Co.* v. *Delaware, L. & W. R. R. Co.*, 27 I. C. C. 441, 442; *Commercial Club of Omaha* v. *Ander-*

The Louisville & Nashville also contends that the order, in so far as it awards reparation for the two-year period, is void upon another ground. The main contention is that, if the Commission acquired jurisdiction, it was later lost, because the order of June 1, 1914 denied reparation, and not having been suspended, became irrevocable at the expiration of one year thereafter, although the main proceeding was then being actively prosecuted and a petition for rehearing of the application for reparation was later filed.[4] The earliest order fixing the amount of the reparation was that entered March 8, 1921. The argument is that, although the rules of the Commission then in force fixed no time for filing petitions for rehearing, a one-year limit must be implied as to the rehearing of orders denying reparation, because § 16 provides that suit on orders granting reparation can be brought only if commenced within one year after entry of the order. This

_____

*son & S. R. Ry. Co.*, 41 I. C. C. 480, 482; *Buffalo Union Furnace Co. v. Lake Shore & M. S. Ry. Co.*, 44 I. C. C. 267, 269; *National Petroleum Assn. v. Missouri, K. & T. Ry. Co.*, 58 I. G. C. 415, 418; *Coakley v. Director General*, 59 I. C. C. 141, 144; *National Preservers, etc. Assn. v. Southern Ry. Co.*, 74 I. C. C. 179, 183.

[4] The original order of June 1, 1914, which reduced rates for the future, did not grant any reparation. The Commission did not then decide whether the rates had been unreasonable at any time prior to the entry of the order, and the report stated merely: " Reparation is prayed for, but under the circumstances of this case, we do not believe that it may fairly be awarded." The Sloss-Sheffield Company petitioned for a rehearing in respect to reparation for the period prior to the filing of the original complaint; but it did not do so until July 22, 1915. The application so made was not acted upon until December 9, 1918. The Commission then decided that the Sloss-Sheffield Company was entitled to a finding as to the reasonableness of the rates during the two years immediately preceding the filing of the original complaint and authorized the parties to introduce additional evidence on this issue. 51 I. C. C. 635. On April 7, 1919, the Commission decided that the rates had been unreasonable during the two-year period; that reparation should be made, 52 I. C. C. 576; but that, upon the then record, it was unable to fix the amount.

argument, which seeks to reverse a settled practice of the Commission as to the time within which petitions for rehearing could then be filed, is not persuasive. The further contention that the delay of the Commission in disposing of the application for rehearing deprived it of jurisdiction is obviously unfounded.

*Third.* It is claimed that the order sued on is void to the extent that it includes damages on account of shipments made between April 16, 1912 and July 22, 1913. The contention is that the prayers of the original complaint, filed April 16, 1912, asked for reparation only on account of shipments made within two years theretofore; that a prayer for reparation on account of shipments to be made thereafter was first introduced by the supplemental petition filed July 22, 1915; and that, therefore, the special two-year statute of limitations barred recovery on account of shipments made during this fifteen months' period. We think the Court of Appeals was right in refusing to limit the prayer in the original petition. The language used does not require a construction which would so narrow its scope. A reading of the prayer as seeking damages for losses suffered in the past through the exaction of existing rates, but not for losses which will result while the proceeding to reduce them is pending, would deny to the words used their natural meaning and impute to the complainant a strange eccentricity of desire. The action of the Commission was in harmony with its own long settled practice and with the practice of courts in analogous cases.[5]

[5] *Buffalo Union Furnace Co.* v. *Lake Shore & M. S. Ry. Co.,* 44 I. C. C. 267, 269; *Plymouth Coal Co.* v. *Pennsylvania R. R. Co,* 56 I. C. C. 699, 706–707; *G. B. Markle Co.* v. *Lehigh Valley R. R. Co.,* 57 I. C. C. 375, 376; *National Petroleum Assn.* v. *Missouri, K. & T. Ry. Co.,* 58 I. C. C. 415, 417–418. See also *Freight Bureau* v. *New York, N. H & H. R. R. Co.,* 63 I. C. C. 327, 334; *Indian Packing Corp.* v. *Director General,* 64 I. C. C. 205, 210; *American Fork & Hoe Co.* v. *St. Louis & S. F. R. R. Co.,* 69 I. C. C. 173; *Globe Elevator Co.* v.

*Fourth.* It is claimed that the order of reparation sued
on is void to the extent that it includes damages on ac-
count of shipments made between April 17, 1910 and July
22, 1913, over lines of the Louisville & Nashville, the
initial carrier, to points on the lines of certain connecting
carriers operating in central freight association territory.
The contention is that the cause of action against the
Louisville & Nashville was barred as to such shipments
by the special two-year statute of limitations, because
these connecting carriers were not made parties to the
proceeding before the Commission until the scope of the
enquiry was widened by its order of November 3, 1914.
This contention rests primarily upon the assertion that
the original complaint was not broad enough to justify
any relief as to rates over connecting lines and that the
claim for reparation arising out of shipment over these
was not made until the filing of the supplemental com-
plaint on July 22, 1915. We are of the opinion that, in
this respect also, the prayer for reparation in the original
complaint (which includes a prayer for general relief)
should not be so narrowly construed. The delay in join-
ing these connecting carriers did preclude an award of
reparation as against them for the period without the
statutory limit; and this was recognized by the Commis-
sion in the order entered. But the delay in making these
connecting carriers parties to the proceeding before the
Commission did not afford a defense to the Louisville &
Nashville; because, for reasons about to be stated in dis-

*Director General,* 74 I. C. C. 591; *Bradford Rig & Reel Co.* v.
*Director General,* 80 I. C. C. 335, 338; *Lissberger & Co.* v. *Pennsyl-
vania R. R. Co.,* 81 I. C. C. 645, 648; *Boren-Stewart Co.* v. *Balti-
more & O. R. R. Co.,* 83 I. C. C. 215, 216–217; *Beaumont Chamber
of Commerce* v. *Director General,* 85 I. C. C. 139, 145; *Utah Gilsonite
Co.* v. *Atchison, T. & S. F. Ry. Co.,* 85 I. C. C. 557, 570; *Cohen* v.
*Atchison, T. & S. F. Ry. Co.,* 88 I. C. C. 143, 146.

Compare *Lehigh Valley R. R. Co.* v. *American Hay Co.,* 219 Fed.
539; *Lehigh Valley R. R. Co.* v. *Markle Co.,* 279 Fed. 261.

cussing another objection, the liability for exacting unlawful charges is joint and several. Compare *Interstate Commerce Commission* v. *Louisville & Nashville R. R. Co.,* 118 Fed. 613.

*Fifth.* It is claimed that the order of reparation is void to the extent that it includes damages payable by the Louisville & Nashville in excess of 23 cents a ton on shipments transported, under joint through rates, over lines of connecting carriers to points beyond the Ohio River crossings. The contention is that the liability of the connecting carriers is not joint and several; that each is liable individually only for the part which it received of the excess unlawfully exacted; and that the Louisville & Nashville must be deemed to have received only 23 cents of the excess, because the Commission, when requested by the carriers to decide under § 15 in what proportions the future reduction of 35 cents in the joint through rates already ordered should be borne, decided that the Louisville & Nashville should bear a shrinkage of 23 cents in the existing division and the lines north of the River a shrinkage of the remaining 12 cents. The argument is that the joint through rate, although in fact established by the voluntary act of the carriers, should be deemed to have been compelled by law, since § 1(4) made it the duty of carriers to establish through routes and § 15(3) empowered the Commission to enforce that duty; that the joint through rates should be treated as if they were merely a combination of the full individual rates of the several carriers, because the rates in question were in fact constructed by combining as factors the existing published proportional rates of the several carriers; that carriers necessarily exercise a fallible judgment as to reasonableness when initiating and in agreeing upon a joint rate; that a later decision by the Commission that the joint rate is excessive does not involve a finding that the carriers acted either arbitrarily or from bad motives in establish-

ing it; that the excess charge for which a carrier should be made liable is only that which results from its own error in judgment; that the court should assume that no carrier had any control over any factor in the joint rate except the proportion attributable to its own line; and that consequently the Louisville & Nashville should be held to have contributed to the injury of this shipper only to the extent of 23 cents a ton.[6]   The argument is unsound.

The cause of action sued on is of statutory origin.   It rests primarily upon § 8 which declares that if " any common carrier . . . shall do, cause to be done, or permit to be done any act, matter or thing in this act prohibited or declared to be unlawful . . . such common carrier shall be liable . . . for the full amount of damages sustained in consequence of any such violation of the provisions of this act. . . ."   The Commission held early, and has consistently held since, that carriers who by means of a joint through rate make excessive charges are liable jointly and severally for all the damage sustained.[7]   It is true that participation in joint rates does not make connecting carriers partners and that each does not become liable like a partner for every tort of any of the others engaged in the common enterprise.   *Central R. R. Co.* v. *United States,*

---

[6] For the characteristics of through routes, of joint rates, of proportional rates, of combinations of locals, and of divisions of joint rates, see *Kansas City Southern Ry. Co.* v. *C. H. Albers Commission Co.,* 223 U. S. 573, 586-8; *St. Louis Southwestern Ry. Co.* v. *United States,* 245 U. S. 136; *Central R. R. Co.* v. *United States,* 257 U. S. 247, 255; *Baltimore & Ohio Southwestern R. R. Co.* v. *Settle,* 260 U. S. 166; *New England Divisions Case,* 261 U. S. 184; *United States* v. *Illinois Central R. R. Co.,* 263 U. S. 515; *United States* v. *Abilene & Southern Ry. Co.,* 265 U. S. 274; *United States* v. *American Ry. Express Co.,* 265 U. S. 425.

[7] *Independent Refiners' Assn.* v. *Western N. Y. & P. R. R. Co.,* 6 I. C. C. 376, 383-385; *Morti* v. *Chicago, M. & St. P. Ry. Co.,* 13 I. C. C. 513, 515; *Nicola, Stone & Myers Co.* v. *Louisville & Nashville R. R. Co.,* 14 I. C. C. 199, 209; *Black Horse Tobacco Co.* v. *Illinois Central R. R. Co.,* 17 I. C. C. 588, 590, 593; *Sondheimer Co.* v. *Illinois*

257 U. S. 247, 259.  Each connecting carrier is liable only
for its own act.  But the establishment of a joint rate by
the concurrence of connecting carriers is necessarily the
act of each, because the establishment of the rate is done
by their joint agreement.  The case at bar is not like *In-
surance Co.* v. *Railroad Co.,* 104 U. S. 146, on which the
Louisville & Nashville relies.

The fact that the joint rate had been constructed out
of existing proportional rates is not of legal significance.
The rates complained of were not merely the aggregate of
individual local or proportional rates customarily charged
by the respective lines for the transportation included in
the through routes.  The rates in question were strictly
joint through rates.  Each through rate was complained of
as a unit.  Compare *Parsons* v. *Chicago & Northwestern
Ry. Co.,* 167 U. S. 447, 455–6.  A single charge was made
for the transportation from point of origin to point of
destination.

Nor does the fact that the connecting carriers may have
been induced to enter into these agreements for joint
through rates because the Interstate Commerce Act had
declared this to be the general duty of all carriers, prevent
the agreement actually entered into from being the joint

---

*Central R. R. Co.,* 20 I. C. C. 606, 610; *Webster Grocer Company* v.
*Chicago & Northwestern Ry. Co.,* 21 I. C. C. 20; *International Agri-
cultural Corp.* v. *Danville & Nashville R. R. Co.,* 29 I. C. C. 391;
*Best Co.* v. *Great Northern Ry. Co.,* 33 I. C. C. 1, 3; *Orgill Bros. Co.*
v. *Nashville, Chattanooga & St. Louis Ry. Co.,* 39 I. C. C. 513, 514;
*Heinz* v. *Pere Marquette R. R. Co.,* 39 I. C. C. 622, 624; *Riverside
Mills* v. *A. & S. Steamboat Co.,* 40 I. C. C. 501, 502; *Squire & Co.* v.
*A. S. R. Co.,* 44 I. C. C. 509; *Swift & Co.* v. *Missouri Pac. Ry. Co.,* 49
I. C. C. 336, 337; *International Nickel Co.* v. *Director General,* 66
I. C. C. 627, 628; *United States Graphite Co.* v. *Director General,*
88 I. C. C. 157, 160.   This course of action was not affected by the deci-
sion in *Western New York & Pennsylvania R. R. Co.* v. *Penn Refining
Co.,* 137 Fed. 343, 357–8; affirmed in 208 U. S. 208.  Compare *Texas
& Pacific Ry. Co.* v. *Interstate Commerce Commission,* 162 U. S.
197, 205.

act of these carriers. Every local or individual rate is likewise established pursuant to a duty. Whether a rate be individual or joint the Commission may enforce performance if the duty to establish it is neglected. The liability in the case at bar arises out of the wrongful exaction from the shipper, not out of the unlawful receipt or unjust enrichment by the carrier. Every carrier who participates in the infliction of this wrong is liable *in solido* like every other joint tort feasor. The tariff rate, although unlawful because excessive, was as between shipper and carrier the only legal rate. Neither would have been at liberty to avail itself of more favorable rates for any part of the through carriage. Compare *Baltimore & Ohio Southwestern R. R. Co.* v. *Seattle,* 260 U. S. 166, 171. The Louisville & Nashville, the initial carrier, exacted the excessive joint rates on behalf of itself and of all of the connecting carriers who with it were parties to the joint through rates.

The division of the joint rate among the participating carriers is a matter which in no way concerns the shipper. The shipper's only interest is that the joint rate be reasonable as a whole. It may be unreasonable although each of the factors of which it is constructed was reasonable. It may be reasonable although some of the factors, or of the divisions of the participants, were unreasonable. Moreover, there is no finding that the excess received by the Louisville & Nashville was only 23 cents a ton. The Commission did not fix or determine the rights of the several carriers as against each other in respect to the reparation awarded; nor had it, so far as appears, fixed the divisions of the joint rate theretofore existing. Awarding reparation for excessive charges in the past and regulating rates for the future involve the determination of matters essentially different. *Baer Bros. Mercantile Co.* v. *Denver & Rio Grande R. R. Co.,* 233 U. S. 479.

*Sixth.* It is claimed that the Sloss-Sheffield Company cannot recover, because it was not damaged by the ex-

cessive freight charges. The Commission and the District Court found that the Sloss-Sheffield Company bore the transportation charges and was damaged to the extent of the difference between the charges paid and those that would have accrued at the rates found reasonable. Both tribunals found further that all the iron was sold f. o. b. destination; that it was shipped to purchasers named as consignees on straight bills of lading; that it was invoiced and charged on the seller's books at the full delivered price; that, pursuant to arrangement between seller and purchaser, the consignee physically paid the freight upon acceptance of the delivery; and that he was credited with this at the rate specified in the sales contract as a part payment of the purchase price, and remitted only the balance of the purchase price.

The objection urged is not that the company failed to make specific proof of pecuniary loss—the failure held in *Pennsylvania R. R. Co.* v. *International Coal Mining Company,* 230 U. S. 184, 206, to be fatal in a suit under § 2 for unjust discrimination, and in *Davis* v. *Portland Seed Co.,* 264 U. S. 403, to be fatal in a suit under § 4 for violation of the long-and-short-haul clause. The carrier concedes, as it must under *Southern Pacific Co.* v. *Darnell-Taenzer Lumber Co.,* 245 U. S. 531, that a recovery for excessive freight charges can be had under § 1 without specific proof of pecuniary loss, and that the measure of damages is the amount of the excess exacted. It was likewise settled by *Southern Pacific* v. *Darnell-Taenzer Lumber Co.* (see 190 Fed. 659; 221 Fed. 890), that where goods are sold f. o. b. destination, it is ordinarily the seller who bears the freight, who suffers from the excessive charge, and who consequently is entitled to sue.[8] The

---

[8] Such had been the uniform decision of the Commission. *Hayden & Westcott Lumber Co.* v. *Gulf & Ship Island R. R. Co.,* 14 I. C. C. 537, 538; *Mountain Ice Co.* v. *Delaware, Lackawanna & Western R. R. Co.,* 21 I. C. C. 45, 51; *Lamb, McGregor & Co.* v. *Chicago & Northwestern R. R. Co.,* 22 I. C. C. 346; *Central Commercial Co.* v.

contention is that facts specifically found differentiate the case at bar and overcome the *prima facie* effect of the Commission's finding as to damages; that because of these specific facts it was not the Sloss-Sheffield Company, but the purchasers of the iron from it, who paid and bore these freight charges; and that it was these purchasers alone who were entitled to reparation.

The additional facts relied upon to support this objection to recovery are these: All the shipments were made under a standard form of contract which was applicable to sales for future delivery in installments and which contained a provision substantially as follows:

" Price. Fourteen dollars and eighty five cents ($14.85) per ton of 2240 lbs. delivered at Chicago, Illinois.

" This price is based on present tariff freight rate of $4.35 per ton. In case the tariff rate declines, the buyer is to have the benefit of such decline. In case the tariff freight rate advances, the buyer is to pay the advance.

" Freight, cash; balance, cash 30 days from average date of monthly deliveries (Invoice date). . . . The seller not will be liable for any overcharge in freight when correct rate is expressed in bill of lading."

The provision in question is a common one in contracts of sale. Its effect upon the consignor's right to recover

---

*Atchison, Topeka & Santa Fe Ry. Co.*, 26 I. C. C. 373, 376; *Michigan Hardwood Mfrs. Assn.* v. *Freight Bureau*, 27 I. C. C. 32, 38–40; *Ballou & Wright* v. *New York, New Haven & Hartford R. R. Co.*, 34 I. C. C. 120; *Bascom-French Co.* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 34 I. C. C. 388, 389; *Louisiana Central Lumber Co.* v. *Chicago, Burlington & Quincy R. R. Co.*, 35 I. C. C. 38, 39; *Traffic Bureau, Sioux City Commercial Club.* v. *A. & S. R. R. Co.*, 37 I. C. C. 353; *Advance Bedding Co.* v. *Atchison, Topeka & Santa Fe Ry. Co.*, 38 I. C. C. 31, 32; *Charles Bolt Co.* v. *Baltimore & Ohio R. R. Co.*, 42 I. C. C. 175, 176; *Federal Oil & Supply Co.* v. *Director General*, 60 I. C. C. 185, 187; *Iola Cement Mills Traffic Ass'n* v. *Director General*, 66 I. C. C. 495, 500; *Central Wisconsin Supply Co.* v. *Director General*, 68 I. C. C. 409, 411; *Wyoming Sugar Co.* v. *Director General*, 77 I. C. C. 470, 471–472; 88 I. C. C. 213, 216.

overcharges was carefully considered by the Commission in 1911 in *Baker Mfg. Co.* v. *Chicago & Northwestern Ry. Co.,* 21 I. C. C. 605. It was then held that the consignor must sue if goods were sold f. o. b. destination. This case has been consistently followed by the Commission since;[9] and it was cited in *Southern Pacific Co.* v. *Darnell-Taenzer Lumber Co.,* 245 U. S. 531, 534. In the case at bar, both the consignor and the consignees claimed reparation; and the Commission's decision denying relief to the consignees seems to have been acquiesced in before that tribunal by all parties.

The Louisville & Nashville argues now that a sale at the delivered price of $14.85 is, by reason of this provision, the legal equivalent of a sale at $10.50 plus freight; that under a contract of sale at a fixed price plus freight the purchaser would be entitled "in case the tariff rate declines" to the benefit of "the decline"; that a decision that a published rate exacted was excessive is the legal equivalent of a decline in rates; that under the provision quoted the purchaser would be entitled, as against the seller, to any damages payable by the carrier for having established and collected the higher tariff rate thereafter found to be unlawful because excessive; and that, since the refund to be made by the carrier would ultimately enure to the purchaser's benefit, no damage was suffered by the seller by reason of the excessive freight charge.

The construction urged ignores the commercial significance of selling at a delivered price. When a seller

---

[9] *Commercial Club of Omaha* v. *Anderson & S. R. Ry. Co.,* 27 I. C. C. 302, 322; *Rapier Sugar Feed Co.* v. *Louisville & N. R. R. Co.,* 47 I. C. C. 222, 223; *Hubinger Bros. Co.* v. *Director General,* 58 I C. C. 53, 57; *Keokuk Electric Co.* v. *Director General,* 68 I. C. C. 517, 520; *Davenport Commercial Club* v. *Director General,* 73 I. C. C. 251, 258; *Roxana Petroleum Corp.* v. *Director General,* 74 I. C. C. 605, 607. Compare *Standard Oil Co.* v. *Director General,* 89 I. C. C. 7, 9–10; *Dolese Bros. Co.* v. *Atchison, T. & S. F. Ry. Co.,* 89 I. C. C. 110, 122.

enters a competitive market with a standard article he must meet offerings from other sources. On goods sold f. o. b. destination, the published freight charge from the point of origin becomes, in essence, a part of the seller's cost of production. An excessive freight charge for delivery of the finished article affects him as directly as does a like charge upon his raw materials. Moreover, the burden of the published freight rate rested upon the consignor under the bill of lading, *Louisville & Nashville R. R. Co. v. Central Iron & Coal Co.*, 265 U. S. 59, 67, as well as under the contract of sale. The purchaser who paid the freight did so solely as agent for the seller. The carrier did not know of the provision in the sales contracts. With the rights or equities as between seller and purchaser it had and has no concern, nor need we concern ourselves with them.

*Seventh.* It is claimed that the order of reparation is void to the extent that it included as damages interest amounting to $25,979.49 accrued prior to the entry of the final order on July 12, 1921; and that the judgment is erroneous for the further reason that it included interest upon interest to the extent of $1,363.93, as it allowed interest generally from the date of the award. The main contention is that no interest is allowable prior to the date of the final award because until then there was no obligation to pay the claim in suit. The argument is that until entry of the award, it was uncertain whether any amount was payable by way of reparation, since the Commission might reduce rates for the future without awarding any damages for the past; that, moreover, the claim was unliquidated; that the claim was, in its nature, one which the parties could never voluntarily have liquidated, since a shipper must, in any event, pay freight rates in accordance with the tariff as published and the carrier must retain the amount received; that failure by the carriers to observe this rule would have been a criminal

violation of the Elkins Act, 32 Stat. 847; 34 Stat. 584; that repayment by the carrier could, therefore, not have been made legally until after the final award, *Pennsylvania R. R. Co.* v. *International Coal Mining Co.*, 230 U. S. 184, 197; that, for this reason, there could be no culpable delay in failing to repay the excess earlier; and that consequently there was lacking the only legal basis for allowing interest.

It has been the uniform practice of the Commission to recognize as an element of the damages loss of interest on charges unlawfully exacted; and, in ordering reparation, it has usually included as a part of the damages such interest from the date of the payment.[10] In *Meeker & Co.* v. *Lehigh Valley R. R. Co.*, 236 U. S. 412, 420, in *Meeker* v. *Lehigh Valley R. R. Co.*, 236 U. S. 434, 437, and in *Mills* v. *Lehigh Valley R. R. Co.*, 238 U. S. 473, 477–8, in each of which cases a judgment enforcing such an order was affirmed by this Court, the opinions show that interest had been allowed in accordance with this practice.[11] The practice of the Commission conforms to

[10] In *International, etc. Corp.* v. *Louisville & Nashville R. R. Co.*, 29 I. C. C. 391, 395, it is stated: "The Commission has uniformly allowed interest on claims for reparation." See *E. I. Du Pont, etc. Co.* v. *Director General*, 55 I. C. C. 246, 247; *National Petroleum Ass'n.* v. *Missouri, Kansas & Texas Ry. Co.*, 58 I. C. C. 415; *Shreveport Creosoting Co.* v. *Louisiana & Pacific Ry. Co.*, 92 I. C. C. 519. The Commission has said that interest will not be allowed where the record does not show the date of the payment. *Morris & Co.* v. *Director General*, 74 I. C. C. 242, 244.

[11] In *Louisville & Nashville R. R. Co.* v. *Ohio Valley Tie Co.*, 242 U. S. 288, 291, the damages recoverable under §§ 8, 9 and 16 of the Act were said to include loss due to "the keeping of the plaintiff out of its money." In *Pennsylvania R. R. Co.* v. *Minds*, 250 U. S. 368, 370–1, the Court declared that "unless interest is to be allowed there seems to be no means of making the claimants whole for the wrongs sustained by violations of the statute." Compare *Arkadelphia Milling Co.* v. *St. Louis Southwestern Ry. Co.*, 249 U. S. 134, 147.

the general rules governing the allowance of interest.
The wrong for which the statute renders the carrier liable
is the exacting of payment pursuant to an unlawful rate,
not the withholding of the excess unlawfully exacted.
The mere fact that the validity of the claim is disputed
and that the amount recoverable is uncertain obviously
does not bar the recovery of interest. The Commission
properly determined not only whether interest should be
included, but also the date from which it shall be included.
Compare *Arkadelphia Co.* v. *St. Louis, S. W. Ry. Co.,* 249
U. S. 134, 147; *Eddy* v. *LaFayette,* 163 U. S. 456, 467;
*The Scotland,* 118 U. S. 507, 519. On the findings made
we cannot say that the conclusion of the Commission that
interest should be paid from the date of the illegal exaction
was unwarranted.

The further contention is that by allowing interest from
September 12, 1921, the effective date of the Commission's order, on the whole amount then payable, compound interest to the extent of $1,363.93 was allowed. It
is true that the judgment entered involves such payment;
but it does not follow that this was error. Payment of
some compound interest often results when a judgment
of affirmance is entered by an appellate court. It results,
likewise, whenever a trial court enters judgment in an
action upon a judgment or upon an award. An order
of reparation may be likened to an award in this respect.

> *Affirmed on writ of error.*
> *Writ of certiorari denied.*

The separate opinion of Mr. Justice McReynolds.

When this matter was before the Interstate Commerce
Commission, July, 1916, Commissioner McChord, member since 1910, wrote a well-considered dissenting opinion
pointing out that defendant in error had suffered no proximate damage and therefore ought not to recover. 40
I. C. C. 738. I think he was right.

Apparently for some years the Commission has generally accepted the view that the consignee who pays freight charges under an f. o. b. destination contract of sale acts as agent for the consignor and the latter may recover when these are found to be excessive. Of course, the decisions deserve attention, but if they support the reparation order here questioned (where the consignee had clear right to demand reasonable rates) they should be disapproved, not followed. Reiteration did not cure the fundamental error. The facts are not in dispute; the function of this Court is to declare the law. Nothing heretofore said by us precludes the defense of no damage.

At Birmingham, Ala., defendant in error accepted a written proposition made by the Chicago Foundry & Machine Company to purchase fifty tons of pig iron at "fourteen dollars and eighty-five cents per ton of 2240 lbs., delivered at Chicago, Illinois," which recited:

"This price is based on present tariff freight rate of $4.35 per ton. In case the tariff rate declines, the buyer is to have the benefit of such decline. In case the tariff freight rate advances, the buyer is to pay the advance. Freight, cash; balance, cash 30 days from average date of monthly deliveries. . . . The seller will not be liable for any overcharge in freight when correct rate is expressed in bill of lading."

From time to time the iron was consigned to the purchaser at Chicago under straight bills of lading issued by plaintiff in error; the weight and rate were stated on each bill. The carrier had no knowledge of the sale agreement; upon receipt of the goods the consignee paid the freight charges. The consignor rendered uniform bills which contained charge items for weights shipped at $14.85 per ton less freight at $4.35 per ton, always with a balance equivalent to $10.50 per ton. Entries on the consignee's books are not disclosed. In substance, as shown by the writing and practice, the consignor agreed to re-

80048°—26——16

ceive from the consignee at the end of thirty days $10.50 per ton and the latter agreed to pay the carrier's lawful charges, whatever they might be. In no event could the consignor receive more than the $10.50; it sold for future delivery at a definite price payable thirty days thereafter. As intended, the consignee accepted the goods, actually paid the charges and was thus in relation with the carrier. It was peculiarly interested in the amount so paid and certainly had the right to demand reasonable rates. The consignor had no immediate interest therein; whether they were more or less could not affect its receipts or profits under the contract.

The provision that, "The seller will not be liable for any overcharge in freight when correct rate is expressed in bill of lading," indicates that the parties did not regard the consignee as mere agent of the seller when paying transportation charges. By disavowing its interest in an overcharge the seller at least recognized the consignee's right to seek redress from the carrier.

Under settled doctrine the right to reparation for violations of the Interstate Commerce Act depends upon proximate damage. This was distinctly affirmed in *Pennsylvania R. R.* v. *International Coal Co.,* 230 U. S. 184; *Southern Pacific Co.* v. *Darnell-Taenzer Co.,* 245 U. S. 531; *Davis* v. *Portland Seed Co.,* 264 U. S. 403. In the case last cited respondent sought, without success, "to secure something for itself without proof of pecuniary loss consequent upon the unlawful act." Here, no better result should follow like effort. In the same case we said: "*Southern Pacific Co.* v. *Darnell-Taenzer Co.,* 245 U. S. 531, presents no conflict with *Pennsylvania R. R.* v. *International Coal Co.* There the shipper paid a published rate which the Commission afterwards found to be unreasonable. This court held he could recover, as the proximate damage of the unlawful demand, the excess above the rate which the Commission had declared to be reasonable. The opinion went no further,"

The following from *Southern Pacific Co.* v. *Darnell-Taenzer Co.* points out plainly enough that there can be no recovery without proximate damage: "The only question before us is that at which we have hinted: whether the fact that the plaintiffs were able to pass on the damage that they sustained in the first instance by paying the unreasonable charge, and to collect that amount from the purchasers, prevents their recovering the overpayment from the carriers. The answer is not difficult. The general tendency of the law, in regard to damages at least, is not to go beyond the first step. As it does not attribute remote consequences to a defendant so it holds him liable if proximately the plaintiff has suffered a loss. The plaintiffs suffered losses to the amount of the verdict when they paid. Their claim accrued at once in the theory of the law and it does not inquire into later events . . . If it be said that the whole transaction is one from a business point of view, it is enough to reply that the unity in this case is not sufficient to entitle the purchaser to recover, any more than the ultimate consumer who in turn paid an increased price. He has no privity with the carrier. . . . The carrier ought not to be allowed to retain his illegal profit, and the only one who can take it from him is the one that alone was in relation with him, and from whom the carrier took the sum. . . . Behind the technical mode of statement is the consideration well emphasized by the Interstate Commerce Commission, of the endlessness and futility of the effort to follow every transaction to its ultimate result. 13 I. C. C. 680. Probably in the end the public pays the damages in most cases of compensated torts."

It affirmatively appears that defendant in error suffered no appreciable damage. The consignee upon its own account, as agreed and obligated by law, paid freight charges upon receipt of the goods. These were too high; it was unlawfully required to pay too much and suffered proximate loss.

It is vain to speculate whether the seller might have obtained better prices if the freight rate had been lower. It might not have gotten the business at all. Certainly it suffered no more than any competitor who failed to sell because of the exorbitant rate but sustained no proximate loss and therefore had no right to reparation. Every member of the public may be said to be damnified by excessive freight rates; but unless proximate damage exists there can be no recovery from the carrier. Here the consignee paid charges unlawfully demanded of it and is actually out of pocket more than it should be. The consignor paid nothing, lost nothing; but under the ruling below it alone may seek reparation—reparation for money unlawfully exacted of another.

MR. JUSTICE STONE dissenting.

I dissent from the opinion of the majority of the Court on the ground that the consignees who paid the freight to procure goods, the title to which was in them when shipped, were within the protection of the statute prohibiting unreasonable freight rates, and upon payment of the illegally exacted freight from their own funds they were the persons suffering proximate damage and were therefore entitled to recover the excess freight within the meaning of the statute and the reasoning of the opinion in *Southern Pacific Co.* v. *Darnell-Taenzer Co.,* 245 U. S. 531.