*639
 
 Allen, J.
 

 The legal question of substance involved in this record is whether the Public Utilities Commission, after authorizing an issue of capital stock by a public utility within this state, may later suspend such authority. The question arises under Section 614-53, G-eneral Code, the pertinent portion of which reads as follows: “A public utility or a railroad, as defined in this act, may, when authorized by order of the commission, and not otherwise, issue stocks, bonds, notes and other evidences of indebtedness, payable at periods of more than twelve months after date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities or for the improvement or maintenance of its service, or for the reorganization or readjustment of its indebtedness and capitalization, or for the discharge or lawful refunding of its obligations, or for the reimbursement of moneys actually expended from income or from any other moneys in the treasury of the public utility or railroad not secured or obtained from the issue of stocks, bonds, notes or other evidences of indebtedness of such public utility or railroad within five years next prior to the filing of an application therefor as herein provided, or for any of the aforesaid purposes except maintenance of service and except replacements in cases where the applicant shall have kept its accounts and vouchers of such expenditures in such manner as to enable the commission to ascertain the amount of money so expended and the purposes for which said expenditure was made.”
 

 The other portions of the section relate to the purpose for, and terms under, which such issue may be authorized, and have no bearing here.
 

 
 *640
 
 It is the contention of the plaintiff in error that, under the above section, the Public Utilities Commission is authorized only to permit the issue of stock, and not to suspend such issue after the sale is authorized. It is to be observed that the order attacked in this error proceeding does not deal with stock issued prior to the effective date of the order, and relates only to future issuance of the securities in question.
 

 It is true that the Public Utilities Commission possesses no powers except such as are conferred by statute.
 
 City of Cincinnati
 
 v.
 
 Public Utilities Commission,
 
 91 Ohio St., 331, 337, 110 N. E., 461, Ann. Cas. 1916 E, 1081;
 
 Village of New Bremen
 
 v.
 
 Public Utilities Commission,
 
 103 Ohio St., 23, 132 N. E., 162. Nevertheless, we do not agree with the contention of the plaintiff in error. If it were true that every exercise of authority by the commission had to be expressly permitted by the statute, there would be little ground for the holding of this court in the case of
 
 Lima Toledo Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 108 Ohio St., 330, 140 N. E., 603. That case held that: ‘ ‘ The Commission is clearly authorized to deny the application for the issuance of securities based upon an overvalution, or one, upon which, taking into consideration the earning value of the property, a fair return upon the amount of such capitalization may not probably be realized or reasonably expected.”
 

 The express authority to deny the application is nowhere given in the statute. It was held in the
 
 Lima Toledo Rd. Co. case, supra,
 
 to be inherent in the power to authorize the issuance of such securities.
 

 
 *641
 
 It is within, the inherent power of the commission to vacate, modify, or suspend an order which it has authority to grant, when such order deals with a subject over which the commission has continuing jurisdiction.
 

 As shown by the record, the original order, dated December 28,1926, which authorized the plaintiff in error to issue its common capital stock in shares of the par value of $10 a share, further ordered that “the proceeds.arising from the sale of said capital stock be expended and used for the following purposes, and no others, to wit: The reimbursement of the applicant’s treasury for said uncapitalized, capital expenditures therefrom, of $64,000.00, to the first day of October, 1926, and the completion and equipment of the applicant’s initial line from the West to Toledo, at an estimated cost of $86,000.00,” and that the “applicant make verified report to this Commission semiannually, within fifteen days after the close of each calendar, semiannual period, of the issue and disposition of said capital stock and, in reasonable detail, the expenditure of the proceeds thereof pursuant to the terms and conditions of this order.”
 

 The jurisdiction of the Public Utilities Commission over the issuance of this stock was therefore, as a matter of fact, a continuing jurisdiction, and it has the power to amend, vacate, or suspend its original order, expressly authorized by the statute, because these powers are necessarily incident to the powers specifically conferred.
 
 Rambarger
 
 v.
 
 Curl,
 
 115 Ohio St., 81, 152 N. E., 18.
 

 Section 614-53 plainly specifies that : “A public utility * * * may, when authorized by order of the
 
 *642
 
 commission, and not otherwise, issue stocks * * Since, under the power necessarily incident to the express power, the authority to issue the stock has been suspended, such authority no longer exists; and, as the public utility may only issue stock when authorized by order of the commission, and not otherwise, we conclude that there is no authority of law for the issuance of any further stock by the plaintiff in error from and after the effective date of the order.
 

 The suspension, modification, or vacation of an order previously made by the commission cannot be capricious or arbitrary. An administrative body must exercise its powers reasonably and lawfully. Thus administrative orders gwsi-judicial in character are void if a hearing was denied, or if granted on an inadequate or unfair hearing, or if the finding was contrary to the indisputable character of the evidence.
 
 Interstate Commerce Commission
 
 v.
 
 Louisville & N. Rd. Co.,
 
 227 U. S., 88, 33 S. Ct., 185, 57 L. Ed., 431;
 
 Louisville & N. Rd. Co.
 
 v.
 
 Sloss-Sheffield Steel & Iron Co.,
 
 269 U. S., 217, 46 S. Ct., 73, 70 L. Ed., 242.
 

 In this case, however, the Public Utilities Commission has not acted capriciously or arbitrarily. The fullest possible hearing was given, and the finding of the commission is amply sustained by the evidence.
 

 The record shows that in this case an advertising leaflet was put out by the plaintiff in error, which made these two statements:
 

 “The International Telepost Co., Inc., now invites the public at large to become participating partners. The experimental work has long been passed; the
 
 *643
 
 securities have been authorized by the Ohio Utilities Commission and if determination, good will ,and ability to accomplish big things count for success, then the corporation stands eloquently in the limelight of One Hundred Per Cent Efficiency.”
 

 “It is not a simple matter to bring about the success of an enterprise whose work intertwines the sanction of municipalities and other quasi-governmental institutions, The officers of the International Telepost Co., Inc., have succeeded in meeting every obstacle, and so much so, that after a complete investigation by the Public Utilities Commission of Ohio, its consent was given to extend the lines into the business centers of that state, thus linking commerce, finance and industry with Columbus, Lima, Dayton, Cincinnati, Youngstown, Akron and Cleveland.”
 

 Such use of the 'permissive order to sell the stock as an advertisement within and without this state, for the purpose of inducing purchase of capital stock, whether taken by itself or together with the other circumstances shown by this record, constitutes good cause for the suspension of the order.
 

 Order affirmed.
 

 Marshall, C. J., Robinson, Jones and Day, JJ., concur.
 

 Kinkade and Matthias, JJ., not participating.