## CONSOLIDATED CUT STONE CO. v. ATCHISON, T. & S. F. RY. CO. et al.

### No. 739.

District Court, N. D. Oklahoma.
March 20, 1930.

Karl Knox Gartner, of Washington, D. C. (Charles A. Steele, W. A. Daugherty, and Thomas F. Shea, all of Tulsa, Okl., of counsel), for plaintiff.

C. C. Hine, of Chicago, Ill., M. D. Green, of Muskogee, Okl., and Charles S. Burg, of St. Louis, Mo., for defendants.

KENNAMER, District Judge.

This suit was brought under section 16, paragraph 2 of the Interstate Commerce Act (36 Stat. 554, as amended, 41 Stat. 491, § 424, 49 USCA § 16[2]), to enforce a reparation award made in favor of the plaintiff by the Interstate Commerce Commission. The Commission, pursuant to complaint filed before it by the plaintiff attacking the rates on rough Indiana limestone from Bedford, Ind., and points taking the same rate to Tulsa, Okl., held hearings and made the reparation award involved in this action. 113 I. C. C. 480.

The Commission made findings that the rate assailed on stone from Bedford, Blumington, and Clear Creek "were, are and for the future will be unreasonable to the extent that they exceeded, exceed or may exceed 37.5¢ on dress stone and 35.5¢ on rough stone including stone sawed on four sides or less; that the complainants made the shipment as described and paid and bore the charges thereon at the rates herein found unreasonable; they have been damaged in the amount of the difference."

The plaintiff prays judgment for $21,-818.46, with interest at the rate of 6 per cent. per annum from the various dates set out in the Commission's order and for an attorney's fee of $5,000 to be taxed as cost. The defendants deny liability, and contend that the finding of the Commission that the complainant paid and bore the charges and was damaged in the amount of the difference between the charges paid and those which would have accrued at the rate found reasonable by the Commission is erroneous and contrary to the evidence.

The contention of the defendants is bottomed upon the fact that, while the plaintiff paid the freight charges to the delivering carriers at Tulsa in the first instance, it remitted the freight bills to the consignors of the shipments, and received credit for the full amount of the freight charges on the purchase price of the stone. It is then insisted that, while the plaintiff did physically pay the charges in the first instance to the carriers, it did not ultimately bear the freight charges, and consequently was and could not have been damaged within the meaning of the Interstate Commerce Act. It was argued that this proposition is sustained by the Supreme Court of the United States in L. & R. Ry. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U. S. 217, 46 S. Ct. 73, 80, 70 L. Ed. 242.

I do not agree with this contention, in view of other uncontroverted facts in the case. The evidence discloses that Indiana limestone could only be obtained from the quarries in the Bedford district. The seller consignor had no competition to meet in selling to the consignee, who is the plaintiff in this action. It is also established the purchases were made from a quoted price list as follows: "Prices effective this date f. o. b. cars at mills with freight allowed to Tulsa, Oklahoma." Confirmation of purchases provided: "This contract is based on a freight rate of 41½¢ per 100 pounds, plus current war taxes. Any increase or decrease in the freight or taxes thereon prior to the completion of this contract is to be added or deducted."

All the shipments were forwarded by the consignors via the routes as directed by the consignee on regular uniform bills of lading. On delivery to consignee by delivering carrier, consignee paid the freight charges, and was receipted therefor. When the plaintiff presented its complaint to the Interstate Commerce Commission, the consignor returned the receipted freight bills to the consignee by written letter, and stated under the contract of purchase the consignee would be entitled to any rebate of freight paid. It is clear the consignor makes no claim against the defendants. The consignee paid the rate found to be unreasonable. It was unlawfully required to pay such rate, and undoubtedly it suffered loss.

In Southern Pacific Co. v. Darnell-Taenzer Co., 245 U. S. 531, 38 S. Ct. 186, 62 L. Ed. 451, the court, speaking through Mr. Justice Holmes, said: "The only question before us is that at which we have hinted: whether the fact that the plaintiffs were able to pass on the damage that they sustained in the first instance by paying the unreasonable charge, and to collect that amount from the purchasers, prevents their recovering the overpayment from the carriers. The answer is not difficult. The general tendency of the law, in regard to damages at least, is not to go beyond the first step. As it does not attribute remote consequences to a defendant so it holds him liable if proximately the plaintiff has suffered a loss. The plaintiffs suffered losses to the amount of the verdict when they paid. Their claim accrued at once in the theory of the law and it does not inquire into later events. Olds v. Mapes-Reeve Construction Co., 177 Mass. 41, 44, 58 N. E. 478."

In the Sloss-Sheffield Case, supra, it was held that "the purchaser who paid the freight did so solely as agent for the seller." The goods were sold f. o. b. destination. Not so in the case here, as the stone was sold f. o. b. at the quarries. In the case at bar the consignor routed the stone as directed by the plaintiff, and acted as its agent therein. Title to the stone passed to consignee when loaded on the cars at the quarries and was billed to consignee. Columbia Mills v. Machenbach Importing Co., 117 Misc. Rep. 283, 191 N. Y. S. 325; Dow Chemical Co. v. Detroit Chemical Works, 208 Mich. 157, 175 N. W. 269, 14 A. L. R. 1200.

I conclude that the plaintiff paid the freight rate, suffered approximate loss, and is entitled to the relief prayed for in its petition. Judgment may be entered accordingly.