DARNELL–TAENZER LUMBER CO. et al. v. SOUTHERN PAC. CO. et al.

(Circuit Court of Appeals, Sixth Circuit.   April 6, 1915.)

No. 2541.

1. COMMERCE ☞95 — INTERSTATE COMMERCE COMMISSION — ENFORCEMENT OF
ORDERS—EVIDENCE.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384,
as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (Comp. St. 1913,
§ 8584), providing that if the Interstate Commerce Commission shall de-
termine that any party is entitled to an award of damages under the pro-
visions of that act for a violation thereof it shall make an order directing
the carrier to pay to him the sum to which he is entitled, that if the car-
rier does not comply with such order such party may file in the Circuit
Court a petition setting forth the causes for which he claims damages and
the order of the Commission, and that such suit shall proceed in all re-
spects like other civil suits for damages, except that the findings and or-
der of the Commission shall be prima facie evidence of the facts therein
stated, a report of the Commission that a freight rate was excessive, and
awarding reparation on account of shipments, and a supplemental report,
determining the amount of reparation to which different shippers were
entitled, amounted to a finding that the shippers were damaged in the
amount stated and that the amounts awarded represented the actual pe-
cuniary loss of the respective shippers.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 145; Dec. Dig.
☞95.]

2. COMMERCE ☞95 — INTERSTATE COMMERCE COMMISSION — UNREASONABLE
RATES—MEASURE OF DAMAGES.

The payment of freight charges, subsequently found by the Interstate
Commerce Commission to be unreasonable and excessive, is presumptive
evidence of damage to the shipper to the extent of the difference between
the rate charged and a reasonable rate, and such presumption can be over-
come only by definite proof, not resting upon uncertainty or conjecture,
negativing the fact or the amount of damage; and hence the prima facie
effect of the Commission's findings that shippers of lumber from Memphis
to California were damaged by an excessive rate to the extent of the ex-
cess above a reasonable rate was not overcome by its further findings
that the price of the lumber was little influenced by Coast prices, that
the shippers charged substantially the same price whether sales were in
the East, for export, or for shipment to California, and that thus the ad-
vance in the freight rate had been added to the price paid by the con-
sumer.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 145; Dec. Dig.
☞95.]

3. COMMERCE ☞97 — INTERSTATE COMMERCE COMMISSION — UNREASONABLE
RATES—ACTIONS FOR DAMAGES—EVIDENCE.

In an action by shippers of lumber from Memphis to California to re-
cover the reparation awarded them by the Interstate Commerce Com-
mission, on the ground that the freight rate charged was unreasonable
and excessive, evidence that the majority of the shipments were made
f. o. b. Coast points, though in commercial practice the consignee paid the
freight on delivery of the lumber, remitting the balance of the bill to the
shipper, that, while the shipper tried to get as closely as possible the
Memphis price plus freight rates, he was seldom able to do so because
of competition, that the lumber was offered on the Coast in competition
with lumber from other points, that the shippers never started to trans-
act business on the f. o. b. Memphis basis, that the freight rate regu-
lated in a large measure whether the shipper could enter the market,
that the increased rate almost entirely cut off the market in question for

one or two years, and that they took the price offered at the other end and then subtracted the freight, made a question for the jury as to whether the shippers suffered actual and substantial damage by reason of the excessive freight rate.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 147; Dec. Dig. ⊙=⇒97.]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Suit by the Darnell-Taenzer Lumber Company and others against the Southern Pacific Company and others. Judgment on a directed verdict for defendants (190 Fed. 659), and plaintiffs bring error. Reversed and remanded, with directions.

Allen Hughes, of Memphis, Tenn., for plaintiffs in error.

C. N. Burch, of Memphis, Tenn., for defendants in error.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

KNAPPEN, Circuit Judge. In the case of George D. Burgess et al. v. Transcontinental Freight Bureau et al., the Interstate Commerce Commission found that a freight rate of 85 cents per 100 pounds on lumber from certain Mississippi Valley territory, including Memphis, Tenn., to Pacific Coast terminals was excessive, and ordered a rate not exceeding 75 cents, effective August 1, 1908. Reparation was awarded on account of shipments made from June 8, 1907, to August 1, 1908. 13 Interst. Com. R. 668–680.

This is a suit for such reparation, under section 16 of the Interstate Commerce Act, as amended June 29, 1906 (34 Stat. 590, c. 3591, § 5 [Comp. St. 1913, § 8584]), brought by plaintiff in error and 7 other lumber companies against the Southern Pacific Railroad Company and 25 other railroads, the amount of reparation to which each plaintiff was entitled as against the respective defendants having been determined by a supplemental report and order of the Commission of October 10, 1910. Decision not reported; see memorandum in 19 Interst. Com. Com'n R. 611. Defendants pleaded, among other defenses: (a) That the 85-cent rate was not unreasonable; and (b) that plaintiffs had not been damaged. On a trial by jury, at the close of the testimony, verdict was directed for defendants; hence this writ of error. Upon the trial plaintiff put in evidence both reports and both orders of the Commission, original and supplemental. There was also oral testimony on plaintiffs' part on the subject of damages. There was testimony pro and con as to the reasonableness of the charges. The direction of verdict is here defended on the ground of utter lack of evidence that plaintiffs suffered damages. This contention involves the propositions: (1) That the reports and orders of the Commission are not prima facie evidence of damages or of the measure thereof; and (2) that both the facts found by the Commission and the oral evidence show that plaintiffs were not damaged.

[1] Since this case was brought here the Supreme Court, in the cases of Meeker v. Lehigh Valley R. R. Co., 236 U. S. 412, 35 Sup.

Ct. 328, 59 L. Ed. ——, and Id., 236 U. S. 434, 35 Sup. Ct. 337, 59 L. Ed. ——, has held that the prima facie evidential effect given by the statute to "the findings and orders of the Commission" includes the findings upon the questions "whether, if the rate was excessive and unreasonable, the shipper was injured thereby, and, if so, the amount of his damages." Under the decisions in the Meeker Cases, it is clear that the original and supplemental reports of the Commission, considered together, amount to a finding that the shippers were damaged by the excessive and unreasonable freight rates in question, and in the respective amounts stated in the reports and orders; in other words, that the amounts awarded represent the actual pecuniary loss of the respective plaintiffs. Unless, therefore, the facts found by the Commission, or the oral evidence presented at the trial, conclusively overcome the prima facie effect of the Commission's ultimate findings as to the fact and amount of damages, the direction of verdict was plainly erroneous.

[2] The Commission's report states that the amount of lumber shipped West from the points of origin here concerned is insignificant in comparison with the total amount handled on the Coast, and that the price of lumber so shipped is little influenced by Coast prices; that shippers in Memphis have charged substantially the same price, whether "sales were in the East, or for export, or for shipment to California;" and that thus "the advance in the freight rate has been added to the price paid by the consumer." Defendants insist that this situation conclusively negatives the existence of pecuniary loss by the shippers. The Commission replied to this contention that it was impossible to say to what extent "complainants may have been actually damaged by the advance in this rate, if the word "damage" is to be interpreted and applied as claimed by the defendants." [1] The Commission, however, speaking through Commissioner Prouty, declined to accept defendant's interpretation of damage, saying:

"These complainants were shippers of hardwood lumber to this destination and they were entitled to a reasonable rate from the defendants for the service of transportation. An unreasonable rate was in fact exacted. They were thereby deprived of a legal right, and the measure of their damage is the difference between the rate to which they were entitled and the rate which they were compelled to pay."

In Nicola, etc., Co. v. L. & N. Ry. Co., 14 Interst. Com. Com'n R. 199, 208, the Commission, speaking through Commissioner Clements, in reply to the carrier's contention that the consumer alone was damaged by the payment of the excessive freight charges, said:

"The suggestion * * * would, if followed, lead the Commission away from the direct results of the act of the carrier in the establishment and exaction of an unjust rate into the domain of indirect and remote consequences and perhaps into questions of equity between the vendor and vendee of the lumber. The vendor sells the lumber for the best price he can get, and the vendee buys at as low a figure as he can. The price which the one is able

---

[1] The report says: "It appeared that one witness suspended operations upon the Pacific Coast owing to the advance in the rate, and other witnesses were of the opinion that more lumber would have been sold under the 75-cent rate."

to get and the other must pay is of necessity fixed or controlled by many influences, including, of course, the transportation charges. * * * We do not understand that the act to regulate commerce contemplates or authorizes the application by the Commission of its provisions in respect to reparation on account of unreasonable rates in such manner. Whatever a court of equity might be able to do and be justified in doing in dealing with the relations between vendor and vendee of the lumber in reference to the rates or other considerations, the Commission is confined in the making of awards for reparation to the injury or damage sustained by those who are the real and substantial parties at interest in the transaction in which such transportation charges have been made. The reparation is due to the person who has been required to pay the excessive charge as the price of transportation. It follows that we must, in making orders of reparation in these cases, upon proper proof of the shipments, make such orders in favor of those who paid the charges as freight charges, or on whose account the same were paid, and who were the true owners of the property transported during the period of transportation."

See, also, Kindelon v. Railway Co., 17 Interst. Com. Com'n R. 251, 254, 255. And the Commission did not regard its findings on the subject of reparation as merely tentative, but as requiring—

"that degree of certainty and satisfactory conviction in the mind and judgment of the Commission as would be deemed necessary under the well-established principles of law as a basis for a judgment in court." Anadarko Cotton Oil Co. v. Atchison, T. & S. F. R. R. Co., 20 Interst. Com. Com'n R. 43, 51.

Since the foregoing decisions of the Commission the Supreme Court has held, in a case involving discrimination in rates as between competing shippers, that the damages recoverable by the shipper against whom the discrimination is practiced must be proved; that the damages are not necessarily measured by the difference between the published rate paid by the complaining shipper and the lower rate given to a more favored shipper, but may be more or less than such difference. Penna. R. R. Co. v. International Coal Co., 230 U. S. 184, 203, 33 Sup. Ct. 893, 57 L. Ed. 1446. While the Commission applies this rule in discrimination cases (New Orleans Bd. of Trade v. Illinois Central R. R. Co., 29 Interst. Com. Com'n R. 32; Spiegle v. Southern Ry. Co., 32 Interst. Com. Com'n R. 687), it has never in cases of purely unreasonable and excessive rates departed from the rule announced in the Burgess Case. A few of the many cases, subsequent to the International Coal Co. Case, in which the rule in the Burgess Case has been applied by the Commission are cited in the margin.[2] While the Supreme Court in the Meeker Cases reaffirmed the rule that damages in reparation cases must be proved, that court, so far as we have seen, has not passed directly upon the proposition involved in the Burgess Case and in the instant case; the nearest approach thereto being the holding in the Meeker Cases that the Commission did not apply "an erroneous or inadmissible measure of damages" in finding that the shippers were damaged to the extent of the

[2] Wallingford v. A., T. & S. F. R. R. Co., 30 Interst. Com. Com'n R. 19, 21; Hooven, Owens, Rentschler Co. v. C., H. & D. Ry. Co., 31 Interst. Com. Com'n R. 550, 552; Cudahy Packing Co. v. A., T. & S. F. R. R. Co., 32 Interst. Com. Com'n R. 560, 563; Omaha Grain Exchange v. Chicago & Alton R. Co., 32 Interst. Com. Com'n R. 597, 600; Du Pont De Nemours Powder Co. v. L. & N. R. Co., 33 Interst. Com. Com'n R. 288, 290.

difference between what they actually paid and what they would have paid under a reasonable rate. In the Meeker Cases no evidence of damages was presented except the Commission's findings, and the evidence on which the Commission acted did not appear.

We find nothing in either the International Coal Co. Case or the Meeker Cases conflicting with the view that damages resulting from the imposition of unreasonably excessive rates are *normally* measured by the difference between the rate charged and a reasonable rate. Cases of excessive and unreasonable rates differ from discriminating charges in the fact that in the latter there is nothing unlawful in the charging and receiving of the higher or published rate on which the demand for reparation is based; the unlawfulness is in giving a lower rate to some one else. On the other hand, the charging of an excessive and unreasonable rate is ipso facto unlawful.

We think the payment by the shipper of excessive and unreasonable freight charges naturally imports legal damage to the shipper therefrom, and that the rule as to the measure of damages applied by the Commission is a reasonable interpretation of the statute as applicable to reparation cases, to the extent of making payment of unreasonably excessive freight charges presumptive evidence of damage to the shipper to the extent of such excessive charges, and that the presumption of damage afforded by such payment cannot be overcome by anything short of definite proof—not resting upon uncertainty or conjecture—negativing the fact or the amount of damage. As said by the Commission in its first report in the Burgess Case (13 Interst. Com. R. at page 680):

"If complainants were obliged to follow every transaction to its ultimate result, and to trace out the exact commercial effect of the freight rate paid, it would never be possible to show damages with sufficient accuracy to justify giving them."

In our judgment, a rule requiring the shipper to mathematically demonstrate that it was actually pecuniarily damaged to the amount of the unreasonable excess in rates so paid would effectually emasculate the reparation provision of the Interstate Commerce Act. We therefore think it clear that the Commission's statement that the excessive freight rate had been added to the price paid by the consumer did not, as matter of law, and in view of the other considerations referred to by the Commission, overcome the prima facie effect of the findings that plaintiffs were damaged to the extent of such excessive freight rate actually paid by them.

[3] The evidence, however, upon the trial below, affirmatively tended to show actual and substantial damage to the shipper by reason of the excessive freight rate. The testimony of the only witness sworn on this subject was to the effect (taking, as we must, the view of it most favorable to plaintiffs) that the majority of the shipments were made f. o. b. Coast points (the shipper, therefore, in fact paying the freight, notwithstanding in commercial practice the consignee paid the freight bill on delivery of the lumber, remitting the shipper the balance of the bill); that while the shipper tried to get as closely as possible the Memphis price plus freight rates, he was seldom able to

do so because of competitive conditions, the lumber in question being offered on the Coast "in competition with everything else out there"; that Japanese oak, for instance, competed with Memphis oak as to 85 to 95 per cent. of its use, and that Japanese oak logs could be laid down in Portland at a price no greater than that of logs delivered in Memphis; that "we never started out to transact business on the f. o. b. Memphis basis"; that the freight rate regulates in a large measure whether the shipper can enter the market; that the increased rate here involved (effective in 1904) almost entirely cut off the market in question for one or two years; that "we take the price we are offered at the other end, and then subtract the freight."

In our opinion, there was substantial evidence of actual damage presented to the jury; and for this reason, also, it was error to direct verdict for defendant. Indeed, as the record stood, taking into account the prima facie effect of the Commission's findings and orders and the testimony adduced on the trial, the plaintiffs were entitled to a direction of verdict in their favor for the amount of the alleged excessive freights, provided the jury should find the rates in effect unreasonable and excessive.

The judgment of the District Court is accordingly reversed, with costs, and the cause remanded, with directions to award a new trial.