Sims, Godman & Stransky, of New York City, and C. R. Hillyer, of Chicago, Ill., for plaintiffs.

A. A. McLaughlin, of Des Moines, Iowa, Sidney F. Andrews, of Washington, D. C., and Edgar R. Hart, of Chicago, Ill., for Director General.

Winston, Strawn & Shaw, of Chicago, Ill. (Frank H. Towner, of Chicago, Ill., of counsel), for Union Stock Yard & Transit Co.

## ADAMS et al. v. MELLON, Director General of Railroads, et al.

District Court, N. D. Illinois, E. D.
January 27, 1930.

No. 37517.

WOODWARD, District Judge. Plaintiffs, 103 in number, members of the Chicago Live Stock Exchange, bring this suit against Andrew Mellon, Director General of Railroads, and Union Stock Yard & Transit Company, under section 16 of the Act to Regulate Commerce (49 USCA § 16) to recover from the defendants jointly $140,001.25, with interest, awarded to plaintiffs in a reparations order entered by the Interstate Commerce Commission on December 12, 1927, which sum has not been paid.

At the conclusion of all the evidence, the defendants separately made motions to instruct the jury to return a verdict in favor of the defendants, alleging, in the respective motions, the reasons why such motions should be allowed.

The defendants, in their motions for a directed verdict, raise many contentions which are common to both defendants and many other contentions which apply separately to the defendant on whose behalf they are made. In the view the court takes of this case, it is unnecessary to summarize these various contentions or to discuss them seriatim.

At the outset, the contention is made by both defendants in their respective motions

to direct a verdict that these plaintiffs are not the real parties in interest and have no standing to maintain this action. This contention grows out of the following state of facts:

The plaintiffs are 103 commission men, members of the Chicago Live Stock Exchange. The action is brought in their individual name. It is not, and does not purport to be, brought in any representative capacity. The plaintiffs do not sue as assignees, as was done in the case of Spiller v. A., T. & S. F. Ry. Co., 253 U. S. 117, 40 S. Ct. 466, 64 L. Ed. 810.

During the period covered by this action, live stock was consigned by the farmers and producers from various points in this country to the several plaintiffs as consignees at the Union Stock Yards, Chicago, Ill. The record shows the names of many thousand shippers from hundreds of points of shipment. The plaintiffs received and sold the live stock so consigned to them and collected the proceeds of the sales. From the gross proceeds of the sales, the plaintiffs paid the freight, terminal, yardage, unloading, and other charges, and, after deducting their commissions, remitted the net amount to the shippers. With the remittance of the net amount of sales, the account was closed. As between the plaintiffs and the shippers, all such accounts were closed long before the petition for reparation was filed with the Interstate Commerce Commission, and hence long before the institution of this suit.

Among the items deducted from the gross amount of sales was one of 25 cents for "unloading" each car of live stock at the Union Stock Yards. The Interstate Commerce Commission has found this charge to be unreasonable and in violation of the act to regulate commerce. It awarded reparation in the sum of $140,001.25 to the plaintiffs in this action. The award not having been paid, this suit is prosecuted.

The question, therefore, is squarely presented as to whether these plaintiffs are the proper parties to maintain this action.

The right to maintain this action is given by statute. The pertinent statutory provision is that found in section 8 of the Act to Regulate Commerce (49 USCA § 8), which reads as follows: "In case any common carrier * * * shall do * * * any act, matter, or thing * * * prohibited or declared to be unlawful * * *, such common carrier shall be liable to the person or persons injured thereby for the full amount of dam-

ages sustained in consequence of any such violation."

This statute is an affirmation of the fundamental rule that the person in whom is the lawful right must bring suit. The party damnified is the real party in interest.

The question raised by these motions, and now under consideration, was raised repeatedly in the hearing before the Interstate Commerce Commission in this case. The record before the Commission is replete with objections made by the defendants to an award to the plaintiffs on the ground that the plaintiffs were not the proper parties to whom a reparation award should be made. This contention of the defendants was overruled by the Commission. The Commission, in its order in this case, on June 2, 1925 (100 I. C. C. 266), finds on page 270 as follows: "We find that the following individuals, copartnerships, and corporations, parties of record, made the shipments as described in this and our preceding reports and paid the charges thereon, herein and heretofore found to have been unreasonable and unlawful; that they have been damaged in the amount of such charges and are severally entitled to reparation, as factors and agents for the shippers, with interest from date of payment."

This statement is followed by the names of the plaintiffs in this case. The order of the Commission in this case is based upon a prior holding of the Commission in the case of Missouri Portland Cement Co. v. Director General, 88 I. C. C. 492.

In the Missouri Portland Cement Co. Case it appeared that carloads of sand were sold f. o. b. complainant's plant at Memphis, Tenn., and consigned to various consignees at different points. The complainant prepaid the switching charges, but admitted that by separate invoices it subsequently collected from the consignees the amount so paid. The complainant contended that it paid, and, as between it and the defendant, bore the charges on these shipments, and that it is a proper party to bring the proceeding. The Commission say: "Defendant in reply cites numerous cases in which we have held that the party who actually bore the charges, as such, is the only one entitled to recover. Defendant's statement of our practice in the past is accurate."

Under the above state of facts the Commission held that the complainant, the consignor, although the excess charges were actually paid by the consignees, was the party injured and was entitled to recover repara-

tion. The holding in the Missouri Portland Cement Co. Case is explained by the Commission in the late case of California Fruit Exchange v. American Railway Express Co., 155 I. C. C. 105, at page 107, as follows: "Contentions similar to those advanced by defendants here were advanced in Missouri Portland Cement Co. v. Director General, 88 I. C. C. 492 * * *. Therein we found that in determining who is entitled to reparation it is not necessary to go beyond the first step; that the first step is taken when the freight charges are paid; and that the fact that whoever paid in the first instance suffered no ultimate damage is not of controlling importance. In the absence here of the consignors who finally bore the charges, the inquiry need not extend further than to determine who paid the charges in the first instance."

Such holding, as the Commission say in its report, reversed a long and uninterrupted series of decisions holding to the contrary. In the case of Sloss-Sheffield Steel & Iron Co. v. L. & N. W. R. R. Co., 40 I. C. C. 738, 740, the Commission summarizes its holdings in the following language:

"The Commission has held without exception that where freight charges are paid by consignees but are charged back to the consignors, the consignees are not entitled to reparation. Mountain Ice Co. v. D., L. & W. R. R. Co., 21 I. C. C. 45; Commercial Club of Omaha v. A. & S. R. Ry. Co., 27 I. C. C. 302; Traffic Bureau, Sioux City Commercial Club v. A. & S. R. R. R. Co., 37 I. C. C. 353; and other cases.

"In Hygienic Ice Co. v. C. & N. W. Ry. Co., 37 I. C. C. 384, the Commission held that the party entitled to reparation is the one who finally bore the freight charges.

"In Oden & Elliott v. S. A. L. Ry., 37 I. C. C. 345, the Commission held that the party entitled to recover is he who has either by himself or by another paid and borne the freight charges for the transportation service, and that the ultimate test as to who shall recover is the bearing of the freight charges for the transportation service."

If this case were decided in accordance with the earlier holdings of the Commission, it is clear that plaintiffs cannot maintain this suit. If, on the other hand, it is to be decided in accordance with the holding of the Commission in the Missouri Portland Cement Co. Case, and forty or fifty similar holdings since the decision in that case, then the plaintiffs are the proper parties to maintain this suit.

Both parties rely upon the following cases in support of their positions, namely: Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U. S. 531, 38 S. Ct. 186, 62 L. Ed. 451; L. & N. R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U. S. 217, 46 S. Ct. 73, 70 L. Ed. 242.

The previous holdings of the Commission were reversed in the Missouri Portland Cement Co. Case by reason of the Commission's interpretation of the decision of the Supreme Court in the case of Southern Pacific Co. v. Darnell-Taenzer Lumber Co., supra.

The Darnell-Taenzer Case, as the court understands it, did not involve the question as to who were proper parties complainant. The question was whether, under the facts in that case, the plaintiffs who actually paid the excess charges suffered any damage. Fully to understand the issues before the court in the Darnell-Taenzer Case, reference must be had to the same case before the Circuit Court of Appeals and reported in 221 F. 890. The contention of the defendant was that the plaintiff had not suffered any damage, although an excess rate was charged, and collected, because "the advance in the freight rate has been added to the price paid by the consumer." Page 892 of 221 F. The court say: "Defendants insist that this situation conclusively negatives the existence of pecuniary loss by the shippers."

In other words, the defendant contended that the consumer, and not the shipper, alone was damaged by the payment of the excessive freight charges. It was to this contention that the Supreme Court, in the Darnell-Taenzer Case, on page 533 of 245 U. S., 38 S. Ct. 186, addressed itself, when it said: "The only question before us is that at which we have hinted; whether the fact that the plaintiffs were able to pass on the damage that they sustained in the first instance by paying the unreasonable charge, and to collect that amount from the purchasers, prevents their recovering the overpayment from the carriers. The answer is not difficult. The general tendency of the law, in regard to damages at least, is not to go beyond the first step. As it does not attribute remote consequences to a defendant so it holds him liable if proximately the plaintiff has suffered a loss. The plaintiffs suffered losses to the amount of the verdict when they paid. Their claim accrued at once in the theory of the law and it does not inquire into later events."

Apparently when the court say that "the general tendency of the law, in regard to damages at least, is not to go beyond the first

step," and that "the law * * * does not inquire into later events," the court addressed itself to the contentions of the defendant that the plaintiff had suffered no loss because of its ability to pass on the excessive freight rates to the consumers. This conception of the language of the court is made clearer by the subsequent language, wherein it is said: "The carrier ought not to be allowed to retain his illegal profit, and the only one who can take it from him is the one that alone was in relation with him, and from whom the carrier took the sum."

As this court interprets the Darnell-Taenzer Case, it simply holds that the court, in a suit on a reparation award, will not inquire into the commercial effect of the payment of an illegal freight rate. What the court refer to, in the Darnell-Taenzer Case, is the economic incidence of the payment of the excessive charge. Who, in an economic sense, ultimately bears the payment, is a matter into which the court will not inquire. The economic bearer of the burden, be he purchaser or consumer, is not a proper party plaintiff. Neither can the defendant absolve itself from the payment of damages because, in an economic sense, the plaintiff might add the excess price to his product and itself impose the burden or injury upon the consumer. From the opinion in the Darnell-Taenzer Case, it is clear that the plaintiffs there were the ones who actually paid the money and who, in the first instance, bore the burden. The Darnell-Taenzer Case is, in the view of this court, not authority for either party to this cause. If it be considered an authority, it is in favor of the defendants.

However, the Sloss-Sheffield Case, supra, is in point. In this case it appeared that the plaintiff was the consignor of all the shipments on which it was awarded reparations. The freight charges were not prepaid. The pig iron embraced in the shipments was sold at a delivered price f. o. b. destination. At the various times when the pig iron was delivered to the purchaser at the point of destination, the purchaser paid the freight bill on the delivery of the shipment and remitted to the plaintiff the amount of the bill for the delivered price less the freight charges at the rate specified in the contract of sale.

The consignor was the plaintiff in the action. It was objected that the Sloss-Sheffield Co. could not recover because it was not damaged by the excessive freight charges. With respect to that contention, the court say, on page 235 of 269 U. S., 46 S. Ct. 79:

"The Commission and the District Court found that the Sloss-Sheffield Company bore the transportation charges and was damaged to the extent of the difference between the charges paid and those that would have accrued at the rates found reasonable. Both tribunals found further that all the iron was sold f. o. b. destination; that it was shipped to purchasers . named as consignees on straight bills of lading; that it was invoiced and charged on the seller's books at the full delivered price; that, pursuant to arrangement between seller and purchaser, the consignee physically paid the freight upon acceptance of the delivery; and that he was credited with this at the rate specified in the sales contract as a part payment of the purchase price, and remitted only the balance of the purchase price.

"The objection urged is not that the company failed to make specific proof of pecuniary loss—the failure held in Pennsylvania R. R. Co. v. International Coal Mining Co., 230 U. S. 184, 206, 33 S. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315, to be fatal in a suit under section 2 [49 USCA § 2] * * * for unjust discrimination, and in Davis v. Portland Seed Co., 264 U. S. 403, 44 S. Ct. 380, 68 L. Ed. 762, to be fatal in suit under section 4 [49 USCA § 4] * * * for violation of the long and short haul clause. The carrier concedes, as it must under Southern Pacific Co. v. Darnell-Taenzer Lumber Co., 245 U. S. 531, 38 S. Ct. 186, 62 L. Ed. 451, that a recovery for excessive freight charges can be had under section 1 without specific proof of pecuniary loss, and that the measure of damages is the amount of the excess exacted. It was likewise settled by Southern Pacific v. Darnell-Taenzer Lumber Co. (see Darnell-Taenzer Lumber Co. v. Southern Pac. Co. [C. C.] 190 F. 659; 221 F. 890, 137 C. C. A. 460), that where goods are sold f. o. b. destination, it is ordinarily the seller who bears the freight, who suffers from the excessive charge, and who consequently is entitled to sue."

· In a footnote to the above quotation it is said: "Such had been the uniform decision of the Commission." Citing many decisions of the Interstate Commerce Commission.

As the court reads and understands the Sloss-Sheffield Case, it approves the holdings of the Interstate Commerce Commission rendered prior to the holding in the Portland Cement Co. Case.

In the case of Parsons v. Chicago & Northwestern Railway Co., 167 U. S. 447, on page 460, 17 S. Ct. 887, 892, 42 L. Ed. 231, the court say: "The only right of recovery

given by the interstate commerce act to the individual is to the 'person or persons injured thereby for the full amount of damages sustained in consequence of any of the violations of the provisions of this act.' So, before any party can recover under the act, he must show, not merely the wrong of the carrier, but that that wrong has in fact operated to his injury."

While this language is used with reference to a state of facts different from those in this record, yet it states a fundamental rule of law.

In a reparation case, damages may be recovered by those who are the real and substantial parties in interest in the transaction in which illegal transportation charges have been made. The reparation is due to the person who has been required to pay the excessive charge as the price of transportation. The judgment must be in favor of those who pay the freight charges.

Who, in this case, paid and bore the freight charges? It seems obvious from the admitted facts that it was the farmer, producer, and shipper of the live stock. It was his money, and not the money of the commission man, which the carrier illegally retains. He paid the freight. It is true that the manual operation of paying the freight was through the instrumentality of the commission man. But the commission man was using the money of the shipper and not his own money. The commission man was an agent, and, in making the payments, he made them out of the funds of the farmers and shippers. He disbursed no money of his own.

This case calls for the application of the fundamental rule that the proper person to bring an action is the person whose right has been violated. The court holds that the persons whose rights have been violated and whose money the defendants now illegally retain are the farmers, producers, and shippers and not the commission men.

In its opinion, 100 I. C. C. 266, in referring to the right of the plaintiffs in this case to reparation, the Commission say, on page 270: "The right of factors in their representative capacity to recover reparation in their own names for unlawful and unreasonable charges is settled." In support of this conclusion, the Commission cite Memphis Freight Bureau v. St. L. & S. F. R. R. Co., 57 I. C. C. 212. The facts in that case are substantially identical with the facts in this case. The Freight Bureau, on behalf of its members who were factors, prosecuted before the Commission claims of 3,500 growers of cotton on which excessive charges had been paid. The Commission found "that the complainant factors, in their representative capacity, are entitled to reparation with interest."

The Commission men filed claims in the receivership proceeding in the District Court for the Eastern Division of the Eastern District of Missouri. A certified copy of the memorandum opinion of Judge Walter H. Sanborn, Judge of the Court of Appeals of the Eighth Circuit, sitting in the District Court of the United States for the Eastern Division of the Eastern District of Missouri, filed June 17, 1922, in the case of North American Company v. St. Louis and San Francisco R. R. Co., was used in the argument and has been handed to the court. In his opinion, Judge Sanborn says: "The interveners, however, pray that the payment be made to the factors. The defendant objects that the factors were not the parties damaged, the Commission so held, and there is substantial—nay, conclusive evidence that the factors did not, and that the country growers and shippers did suffer and bear the substantial damages. Notwithstanding this fact and notwithstanding the fact that the Commission itself reported and found that the factors in their representative capacity were entitled to the reparation. Its subsequent order was that the receivers be authorized and directed to pay the reparation to the factors without making any reference in that order to their representative capacity."

Judge Sanborn further says: "The factors insist that this court should order the amount of the reparation paid to them. But since they did not, and the growers and shippers did suffer and bear the damages the court is not persuaded that they have either the property rights in the claims for damages or the authority to release or assign them. While, so long as a factor is engaged in discharging his active duty of paying the freight charge including the overcharge and remitting the proceeds, he may have authority to settle, compromise or release the claim of his principal for the refund of the overcharge, because during that time he has a pecuniary interest in the claim for the refund, yet, when such a transaction is completed, without more, the property right of the shipper in the claim for the refund becomes exclusive and the factor's right or power to release, discharge, or assign it no longer exists."

But the plaintiffs contend that the factors are the representatives of the farmers, producers, and shippers, and, in accordance with the rules of the Chicago Live Stock Exchange and with the practice and customs of the exchange with the defendants, suit may be maintained in its name. This contention is well stated by the Commission in its opinion in this case (100 I. C. C. 226, on pages 269, 270): "The commission merchant at the stockyards not only disposes of the shipper's stock at the market and at such price as he deems best, but is his agent in the payment of freight and related charges, such as feeding, etc., and in the filing of claims for overcharge and for loss and damage to the stock in transit. Defendants have frequently recognized this relationship by settling loss and damage claims with the commission merchants."

This contention cannot be maintained. The right to maintain a suit is that given by the statute to "the person or persons injured." The right, therefore, to maintain a suit, is given by law. Any act, practice, or custom, either of the Chicago Live Stock Exchange, of the commission man, or of the carriers, could not confer the right to maintain the suit. In the case of Mackay v. Randolph Macon Coal Co. (C. C. A.) 178 F. 881, 884, the court, among other things, say: "Who may maintain a suit is a matter of law, not subject to be controlled by the private conventions of parties."

To the same effect are the following cases: Gusman v. Marrero, 180 U. S. 81, 21 S. Ct. 293, 45 L. Ed. 436; In re Ellis, Inc., 242 F. 156–159 (D. C. N. J.); Fitkin v. Century Oil Co. (C. C. A.) 16 F.(2d) 22–24; State of Georgia to Use of Fidelity & Deposit Co. v. Bank of Quitman, 117 Ga. 849, 45 S. E. 236; Terrell v. Stevenson, 97 Ga. 570, 25 S. E. 352; Baxter's Executors v. Baxter et al., 43 N. J. Eq. 82, 10 A. 814; Central Railroad & Banking Co. v. Brunswick, etc., R. Co., 87 Ga. 386, 13 S. E. 520.

In the case of Fitkin v. Century Oil Co. (C. C. A.) 16 F.(2d) 22, 24, the court say: "The right to maintain a suit is a matter of law, and not subject to be controlled by private conventions of the parties. Suits must be in the name of the real parties in interest. The only exception to this rule is where a trustee of an express trust may maintain an action in his own name on behalf of the beneficiaries. There the trustee must be the holder of the property or obligation out of which the action arises, or a person with whom or in whose name a contract is made for the benefit of another may maintain an action upon the contract. A trustee under a mortgage comes within this exception as to the security, but not as to the bonds or notes, for they are not payable to the trustee. * * * The mere fact that a trustee holds legal title to security does not make it in equity a creditor with respect to the debt itself."

Plaintiffs further contend that as factors they may maintain the suit because they have an interest in the recovery. That a factor has authority to bring suit in his own name for damage or injury to goods in his business as a factor, or to recover the purchase price where he has an interest in the way of commissions or advancements, and in other circumstances where he is a trustee of an express trust, there seems to be no doubt. The right to sue, however, is in each instance based upon his interest or duty in the protection of the property or the proceeds of the sale.

In Beardsley v. Schmidt, 120 Wis. 405, 98 N. W. 235, 236, 102 Am. St. Rep. 991, in recognition of such rule and right, the court say: "He has, as against his principal in the absence of some stipulation to the contrary, a special interest therein and the proceeds thereof, and the right to control the same until he receives his compensation for services rendered in respect thereto."

It will be noted that such rights of the factor are limited to the period "before he receives his compensation for services rendered in respect thereto."

In the case at bar no situation bringing the plaintiffs within the well-recognized rule as to suits by factors is presented. All charges, including the one in controversy in this case and including commissions had been paid out of the proceeds of the sale—the money of the shipper—and the net proceeds had been remitted to the shipper. Moreover, it is clear from the testimony before the Commission, and now before the court, that, if plaintiffs recover in this case, the plaintiffs will not have a beneficial interest in the money so obtained. This is evident from the testimony of D. C. Mosier, vice president of the Chicago Live Stock Exchange and chairman of the Transportation Committee, given at the examination held at Chicago, Ill., before Examiner Hosmer, on July 14, 1921, in which he said that, when this reparation is collected, if it is collected:

"The shipper and producer will get every cent. Not one dime, not one nickel, will be taken by the Chicago Live Stock Exchange

or any of its members, for the collection of this amount." Page 37.

Again, on the same day, he said: "If this money was remitted to the commission man as' agent for the shipper, he would remit the net amount to the shipper or customer. By net amount there, I mean the full reparation. There will be no charges deducted for the collection." Page 38.

It is apparent that the plaintiffs, commission men, have no legal interest in this proceeding. They are purely volunteers. They have adopted themselves as convenient agents to secure the recovery. They are not the ones who have been damnified by the imposition and collection of the excessive charge.

The court holds that the plaintiffs in this case cannot maintain this action.

The motions are allowed.